J-A10022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LESTER DELOATCH | : | |
| | : | |
| Appellant | : | No. 985 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001559-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LESTER DELOATCH | : | |
| | : | |
| Appellant | : | No. 986 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 1, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001557-2023

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BECK, J.:                              **FILED JUNE 26, 2025**

In these consolidated cases, Lester Deloatch ("Deloatch") appeals from

the judgments of sentence imposed by the Philadelphia County Court of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Common Pleas ("trial court") following his convictions of burglary[1] and other crimes. Deloatch argues that the Commonwealth introduced insufficient evidence to establish an element of burglary, namely that he entered the apartment of his ex-girlfriend, Sianni Gilliam ("Gilliam"), with the intent to commit a crime therein. He also challenges the trial court's authority to decide that he was ineligible for a motivational boot camp program pursuant to Pa.C.S. § 3904 based upon the trial court's misunderstanding of the statutory authority to waive eligibility requirements. After review, we affirm.

Following incidents between Deloatch and Gilliam on November 3, 2022, and December 17, 2022, police charged Deloatch with crimes at two docket numbers.[2] After consolidation of the dockets, the trial court presided over a non-jury bench trial on September 27, 2023, at which the Commonwealth

_____

[1] 18 Pa.C.S. § 3502(a)(1)(i).

[2] At docket number CP-51-CR-0001557-2023, the Commonwealth charged Deloatch with robbery—take property from other/force, theft by unlawful taking—moveable property, receiving stolen property, and harassment—subject other to physical contact. *See* 18 Pa.C.S. §§ 3701(a)(1)(v), 3921(a), 3925(a), 2709(a)(1). At docket number CP-51-CR-0001559-2023, the Commonwealth charged Deloatch with burglary, criminal trespass, theft by unlawful taking—moveable property, receiving stolen property, possessing an instrument of crime, simple assault, criminal mischief, and harassment—subject others to physical contact. *See* 18 Pa.C.S. §§ 3502(a)(1)(i), 3503(a)(i), 3921(a), 3925(a), 907(a), 2705, 3304(a)(5), 2709(a)(1). The Commonwealth also charged Deloatch with recklessly endangering another person in connection with the second incident, but the trial court acquitted Deloatch of this charge.

presented the testimony of Gilliam and three police officers who took reports from Gilliam about the incidents.

According to Gilliam, she was in a relationship with Deloatch that ended in September 2022. N.T., 9/27/2023, at 19-20, 48. On November 3, 2022, Gilliam had just parked her car on the street and was proceeding through a gate into her apartment complex when she saw Deloatch approaching her from the rear. *Id.* at 19-22, 44-45. Deloatch argued with Gilliam, accusing her of seeing someone else; then he snatched her purse from her shoulder, removed her keys from inside the purse, and grabbed her cell phone from her hand. *Id.* at 23-25, 46-47, 49. After Deloatch fled, Gilliam reported the incident to police. *Id.* at 24-25, 57-59. Because Deloatch stole her apartment keys, she changed the locks on her apartment door. *Id.* at 49.

On December 17, 2022, Gilliam locked both doors to her apartment and went to sleep. *Id.* at 25-27. Gilliam was awakened by Deloatch, who was in her bedroom looking through her cell phone and accusing her of cheating on him. *Id.* at 26-28. When he briefly left her bedroom to enter her kitchen, leaving her phone on the bed, Gilliam called the police. *Id.* at 28-31, 51. Deloatch returned to Gilliam's bedroom. *Id.* at 31. He resumed looking through Gilliam's phone and questioning her about numbers he found. *Id.* at 31. Deloatch stood over top of Gilliam's bed and punched her on her arms and legs. *Id.* at 31-32. She attempted to leave the apartment, but Deloatch pushed her and hit her chest with the door. *Id.* at 31-34. He then threw her

phone into the stairwell and broke it. *Id.* at 36-37. According to Gilliam, the knob on her front door, which typically was loose, was now "off the hinge." *Id.* at 43-44. Gilliam also testified that Deloatch had a "box cutter" knife in his hand at some point during the incident. *Id.* at 35. She sustained bruising on her legs from Deloatch's punches, but she did not show or report her injuries to police. *Id.* at 53, 65. Gilliam testified that she told police that her ex-boyfriend had broken into her apartment, *see id.* at 29, 52, but the responding officer recalled that she only had reported that her ex-boyfriend came to her apartment, caused a disturbance, and took her cell phone. *Id.* at 63, 65.

Gilliam also described a third incident that occurred outside of Philadelphia on January 27, 2023.[3] Gilliam saw Deloatch at an adjacent gas pump while she was filling her car with gas. She drove away in her car, but Deloatch followed her in his car. *Id.* at 39-40. After about a mile, he sped up and "cut [her] off" by moving his car in front of hers so that she was forced to stop her car off the road in the grass. *Id.* at 39-40. Deloatch banged on her car window and she called the police. *Id.* She complied with his demands to roll down the window. *Id.* He accused her of being on her way to see

---

[3] The trial court permitted the Commonwealth to introduce evidence concerning the third incident to prove motive and intent pursuant to Pa.R.E. 404(b)(2). Order Granting Motion to Admit Other Acts Evidence, 7/21/2023, at 1.

someone else. *Id.* Deloatch reached through her car window, yanked her keys out of the ignition, and took her phone out of her hand. *Id.* at 40-41.

Deloatch testified on his own behalf. He denied that he was at Gilliam's apartment on November 3, 2022, but admitted to being there on December 17, 2022. *Id.* at 74, 78. Deloatch claimed that he resided with Gilliam from mid-2022 to December 17, 2022, and maintained his own set of keys. *Id.* at 77, 80-81. In tension with his claim that he lived with Gilliam, he maintained that Gilliam invited him to her apartment on December 17, 2022, and that they had a verbal argument. *Id.* at 75, 78. The parties stipulated that if Deloatch's father were to testify, he would testify that Deloatch has a reputation in his community for being peaceful. *Id.* at 73.

At the conclusion of trial, the trial court found Deloatch guilty of all charged crimes except recklessly endangering another person.

The trial court ordered a presentence investigation report ("PSI") and a mental health evaluation, following which it conducted a sentencing hearing on March 1, 2024. Deloatch's counsel advocated for a sentence of three to six years of incarceration and a finding that he was eligible for boot camp. N.T., 3/1/2024, at 18-19. His counsel acknowledged that his burglary conviction rendered him ineligible for the motivational boot camp program,[4]

_____

[4] Motivational boot camp is an alternative to incarceration governed by Chapter 39 of the Prisons and Parole Code. *See* 61 Pa.C.S. §§ 3901-3909. Eligible inmates have the opportunity to participate in a six-month program
*(Footnote Continued Next Page)*

but she informed the court that the prosecutor was willing to waive the eligibility requirements should the court decide to sentence him to a three-year minimum sentence. *Id.* at 18-25. The prosecutor recommended a sentence of five to ten years of incarceration but agreed that the Commonwealth was willing to waive the eligibility requirements for boot camp if the trial court determined that a lesser sentence was appropriate. *Id.* at 22-25. The prosecutor also relayed Gilliam's wish not to participate in the sentencing hearing and that Gilliam did not oppose Deloatch's participation in the boot camp program. *Id.* at 23-24. The trial court repeatedly maintained that the prosecutor lacked authority to waive ineligibility based upon the burglary charge and further indicated that it was unwilling to find Deloatch eligible for the program based upon the nature of the charge. *Id.* at 19-25, 35. The court sentenced Deloatch to three to six years of incarceration for burglary, four years of consecutive reporting probation for robbery, and no further penalty on the remaining charges.

Deloatch timely filed a notice of appeal. Both he and the trial court complied with Pa.R.A.P. 1925.

---

comprised of "rigorous physical activity, intensive regimentation and discipline, work on public projects, substance abuse treatment services …, continuing education, vocational training, prerelease counseling and community corrections aftercare." *Id.* § 3903. "Once an offender successfully completes the program, and following certification by the Department of Corrections to the Parole Board, he or she is entitled to immediate release on parole, regardless of any minimum sentence." *Commonwealth v. Hansley*, 47 A.3d 1180, 1185 n.11 (Pa. 2012) (citing 61 Pa.C.S. § 3907).

Deloatch raises two issues on appeal:

1.    Was the evidence insufficient to support … Deloatch's conviction on the charge of burglary, where the Commonwealth failed to show that he entered the property in question with the specific intent to commit a crime once inside?

2.    Did the trial court err when, believing the Commonwealth lacked the legal authority to waive the eligibility requirements for boot camp, it refused to recognize the prosecutor's waiver of the eligibility requirements and subsequently determined Deloatch was ineligible for boot camp solely because of his burglary conviction?

Deloatch's Brief at 3.

## Sufficiency of the Evidence

We review Deloatch's challenge to the sufficiency of the evidence pursuant to the following standard:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

To prove that Deloatch committed burglary, the Commonwealth needed to establish that he, "with the intent to commit a crime therein," entered Gilliam's apartment when she was present and committed, attempted, or threatened to commit "a bodily injury crime." 18 Pa.C.S. § 3502(a)(1)(i). It is a defense to the crime of burglary if the person is licensed or privileged to enter. *Id.* § 3502(b)(3). A person is privileged to enter "if he may naturally be expected to be on the premises often and in the natural course of his duties or habits," but a person exceeds his privilege if he "would not reasonably be expected to be present[.]" *Commonwealth v. Corbin*, 446 A.2d 308, 311 (Pa. Super. 1982). The Commonwealth must prove that the defendant formed the intent to commit a crime prior to entering and may establish such intent through the defendant's words or inferences derived from his conduct or the attendant circumstances. *Commonwealth v. Russell*, 460 A.2d 316, 321 (Pa. 1983).

Deloatch argues that the Commonwealth failed to prove that Deloatch entered Gilliam's apartment intending to commit a crime once inside. Deloatch's Brief at 16-24. Instead, he entered the apartment intending to confront Gilliam about his belief that she was being unfaithful to him— exercising poor judgment, he acknowledges, but not criminal intent. *Id.* at 16. Like the defendant in *Commonwealth v. Cezaire*, who broke into strangers' homes with an irrational but noncriminal intent to find his brother and who did not form the intent to steal an occupant's cell phone until the

occupant tried to call the police, Deloatch argues that the delay in his violent behavior shows that he did not form the intent to assault Gilliam or to steal her phone until he was already inside and Gilliam tried to call for help. *Id.* at 19-20 (citing *Commonwealth v. Cezaire*, 995 EDA 2019, 2021 WL 3910610, *6 (Pa. Super. Sept. 1, 2021) (non-precedential)). Deloatch further argues that intent cannot be inferred from his manner of entry because the Commonwealth did not conclusively establish how he entered the apartment. *Id.* at 21-23.

Viewing the evidence of record in the light most favorable to the Commonwealth, and deferring to the trial court's credibility determinations, as we must, *see Scott*, 325 A.3d at 849, the Commonwealth introduced sufficient evidence to support each element of the crime of burglary. On the night of the burglary, Gilliam went to sleep in an apartment with locked doors and was jolted awake by Deloatch's unexpected and uninvited presence in her bedroom as he looked through her phone. The evidence establishes that Gilliam believed that she and Deloatch had ended their relationship; Deloatch thrice appeared suddenly, in circumstances where Gilliam was not expecting to see him, to accuse her of cheating on him; and Deloatch was fixated on obtaining access to Gilliam's phone, whether by force or surprise, to interrogate her about her interactions with others. While Deloatch tries to characterize his behavior as a mere lovers' quarrel that escalated into violence, he overlooks that the Commonwealth need not prove that he entered

with the intent to engage in violence; instead, it could, and did, prove that he entered her apartment with the intent to commit any crime and after entry he committed, attempted, or threatened to commit a bodily injury crime. *See* 18 Pa.C.S. § 3502(a)(1)(i) (requiring entry to certain structures while a person is present "with the intent to commit a crime therein" as well as the actual, attempted, or threatened commission of a bodily injury crime after entry). At a minimum, one could infer that he entered with the intent to commit an unlawful taking, as he took unlawful possession of Gilliam's phone to view her contact history while she was sleeping. *See* 18 Pa.C.S. § 3921(a) ("A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof"). Furthermore, given the pattern of incidents, and Deloatch's carrying of a box cutter in his hand, the trial court was entitled to infer that Deloatch entered with intentions that were criminal in nature.

## Sentencing Authority

In his second issue, Deloatch argues that the trial court erred by finding him ineligible to participate in motivational boot camp based upon his burglary conviction in disregard of the Commonwealth's waiver of the eligibility requirements. Deloatch's Brief at 24. Deloatch concedes that but for the prosecutor's waiver of the eligibility requirements, his burglary conviction would render him ineligible to participate. *See id.* at 25. Under Deloatch's interpretation of section 3904(d)(2), however, the victim's input is the only

basis upon which a trial court may refuse to accept a prosecutorial waiver. *Id.* at 25-26 (citing 61 Pa.C.S. § 3904(d)(2)). Because Gilliam did not speak at the sentencing hearing, and the trial court's only articulated rationale was his burglary conviction, Deloatch maintains that the trial court erred by misconstruing the statute and refusing to accept the prosecutorial waiver. *Id.* at 28. Deloatch acknowledges that section 3904(b) affords discretion to trial courts when making eligibility determinations, but he contends that section 3904(b) is limited to scenarios where the trial court opts to exclude an eligible defendant, not to override the prosecutor's waiver to exclude an ineligible defendant. *Id.* at 27. Because the trial court mistakenly believed that the prosecutor lacked the legal authority to waive the eligibility requirements because he was convicted of burglary, a disqualifying offense, Deloatch requests a remand to permit the trial court to correct its "obvious mistake of law" by determining his eligibility for boot camp "in light of the prosecutor's valid exercise of her discretion to waive the eligibility requirements." *Id.* at 28-29.

The Commonwealth contends that Deloatch has waived his argument because the issue implicates the discretionary aspects of Deloatch's sentence and Deloatch's brief omits the statement required by Pa.R.A.P. 2119(f). Commonwealth's Brief at 16. Thus, before we may address the merits of Deloatch's second issue, we must decide the threshold question of whether the issue pertains to the legality of his sentence, which can be appealed as of

right and cannot be waived, or to the discretionary aspects of his sentence, which has procedural prerequisites, including issue preservation, identification of the issue in an appellate brief in accordance with Pa.R.A.P. 2119(f), and invocation of this Court's discretion to address the issue on appeal. *See* 42 Pa.C.S. § 9781(a), (b); Pa.R.A.P. 2119(f). Recognizing that the line between the two types of claims is not always clear, our Supreme Court has directed us to consider whether an appellant is challenging the trial court's authority to impose the sentence at issue—a legality challenge—or to trial court's exercise of that authority—a discretionary aspects challenge. *See Commonwealth v. Prinkey*, 277 A.3d 554, 560, 563-64 (Pa. 2022). Deloatch's legal argument is not always precise, but because he focuses on the trial court's mistaken belief as to the authority to override ineligibility standards, we construe his challenge as one contesting the authority of the trial court to deem him ineligible for boot camp based upon the nature of his conviction when the prosecutor agreed to waive his ineligibility on that same ground. *See Commonwealth v. Finnecy*, 249 A.3d 903, 912 (Pa. 2021) (holding that a claim that the trial court failed to impose a Recidivism Risk Reduction Incentive Act sentence based upon the court's interpretation of the statutory eligibility requirements "necessarily involves a challenge to the sentencing court's authority to impose a particular sentence"). This challenge to the legality of his sentence does not require a Rule 2119(f) statement. *See In re M.W.*, 725 A.2d 729, 731 (Pa. 1999) (explaining that a Rule 2119(f)

- 12 -

statement of reasons relied upon for allowance of appeal was not required because the challenge implicated the legality of the order).

We review challenges to the legality of a sentence using the following standard:

> The scope and standard of review in determining the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Herrin***, 248 A.3d 583, 586 (Pa. Super. 2021).

To be eligible to participate, the statute requires that the inmate must (1) be sentenced to a term of confinement under the Department of Correction's jurisdiction; (2) be serving a term of confinement of a particular length (between two and five years or between three and five years when the inmate is within two years of completing the minimum term); (3) be under forty years of age at the time the inmate is approved for participation; (4) not be subject to a sentence that included a deadly weapon enhancement; (5) not have been convicted or adjudicated delinquent of certain sex crimes; and (6) not have a current or prior conviction within the past ten years for murder, drug trafficking, or a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second or subsequent offenses) or criminal attempt, criminal solicitation or criminal conspiracy to commit any of these offenses. ***See*** 61 Pa. C.S. § 3903. Notably, "burglary as defined in 18 Pa.C.S. §

3502(a)(1)" is included in section 9714's definition of a crime of violence. 42 Pa.C.S. § 9714(g). Before the eligible inmate may participate in the program, the inmate must undergo a selection and approval process by the Department of Corrections. *See* 61 Pa.C.S. § 3906(a)-(b).

Section 3904(b) tasks the sentencing judge with using the sentencing guidelines to identify defendants who are eligible for the program. *Id.* § 3904(b). "The judge shall have the discretion to exclude a defendant from eligibility if the judge determines that the defendant would be inappropriate for placement in a motivational boot camp." *Id.* The judge must note the exclusion on the sentencing order. *Id.*

Section 3904(d) sets forth the provisions governing "waiver of eligibility requirements":

> The prosecuting attorney, in the prosecuting attorney's sole discretion, may advise the court that the Commonwealth has elected to waive the eligibility requirements of this chapter if the victim has been given notice of the prosecuting attorney's intent to waive the eligibility requirements and an opportunity to be heard on the issue.

*Id.* § 3904(d)(1). "The court, after considering victim input, may refuse to accept the prosecuting attorney's waiver of the eligibility requirements." *Id.* § 3904(d)(2).

To determine the authority vested in the trial court, we must interpret the language of the statute governing eligibility for motivational boot camp. "Statutory interpretation is a question of law, as to which our standard of review is de novo and our scope of review plenary." *Commonwealth v.*

- 14 -

*Crosby*, 329 A.3d 1141, 1148-49 (Pa. 2025).  Our object is "to ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. § 1921(a).  Generally, the plain language of the statute "provides the best indication of legislative intent."  *Crosby*, 329 A.3d at 1149; *see also* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").  We must presume, among other things, that the General Assembly did not intend a result that is unreasonable and that it did intend for the entire statute to be effective and certain.  *See* 1 Pa.C.S. § 1922(a)-(2).

In its Rule 1925 opinion, the trial court explained that his burglary conviction constituted a "current conviction for a crime of violence" that statutorily disqualified him from eligibility.  Trial Court Opinion, 6/24/2024, at 10.  As for Deloatch's emphasis upon the Commonwealth's waiver of the eligibility requirements, the trial court maintained that section 3904(d)(2) permitted it to refuse to accept such a waiver.  *Id.*

Section 3904 gives the trial court two opportunities to exercise its discretion: the ability "to exclude" a defendant who is eligible for the program pursuant to the sentencing guidelines, *see* 61 Pa.C.S. § 3904(b), and the ability to "refuse to accept" the prosecuting attorney's waiver of the eligibility requirements of Chapter 61, *see id.* § 3904(d)(2).  Although not stated directly in these terms, the crux of Deloatch's argument appears to be that when the prosecuting attorney invokes her "sole discretion" to waive the

eligibility requirements pursuant to subsection 3904(a)(1), the General Assembly authorized the trial court to accept the waiver and limited the trial court's discretion to refuse the waiver based solely upon the victim's input. *See* Deloatch's Brief at 25-29.

We reject Deloatch's interpretation of the statute based upon the plain language of the statute. While the reference to the prosecuting attorney's "sole discretion" in subsection (d)(1) may initially give the reader pause as to whose discretion the General Assembly vested waiver decisions, a close reading indicates that subsection (d)(1) simply provides the prosecuting attorney with the "sole discretion" to "**advise the court**" of the Commonwealth's waiver election. *See* 61 Pa.C.S. § 3904(d)(1) (emphasis added). In other words, the defendant cannot request relief from the eligibility requirements from the trial court over the prosecutor's objection; the defendant's request must go through the prosecutor first, who, in turn, must involve the victim. *See id.* Section 3904(d)(2) then requires the trial court to consider victim input, which temporally must occur before it decides whether to accept the prosecutor's waiver of eligibility requirements. *See id.* § 3904(d)(2) ("The court, after considering victim input, may refuse to accept the prosecuting attorney's waiver …."). Other than requiring the court to consider the victim's input as part of its decision making, subsection (d)(2) does not otherwise constrain the trial court's discretion to refuse the waiver for reasons other than the victim's input.

It is axiomatic that the trial court has broad discretion to fashion an individualized sentence for an offender. *See Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990). Under Deloatch's interpretation of the statute, the General Assembly has provided the trial court with the discretion to exclude eligible offenders pursuant to subsection (d)(1) but lacks the ability to override the prosecutor's decision to waive the eligibility requirements unless the victim objects. Given the plain language of section 3904(d)(2), as well as the broad discretion vested in a sentencing judge, this interpretation of the statute contravenes our rules of statutory interpretation. *See* 1 Pa.C.S. §§ 1921(b), 1922(1). We therefore conclude that the trial court retains the discretion to accept or reject the prosecutor's waiver of the eligibility requirements, subject to our review for an abuse of that discretion. Accordingly, even though the prosecutor was willing to waive the eligibility requirements, and the victim did not object, nothing in the statute stunted the trial court's discretion and required it to accept the prosecutor's waiver as a matter of law.[5]

**Conclusion**

---

[5] To the extent that Deloatch is also arguing that the trial court abused its discretion by excluding him from boot camp based solely upon his burglary conviction, such argument is unreviewable on the merits based upon the Commonwealth's objection to the lack of a Rule 2119(f) statement in his brief. *See Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004).

Because there is sufficient evidence to prove that Deloatch committed burglary, and because the trial court did not exceed its authority in imposing Deloatch's sentence, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/26/2025